UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DR. DRALVES GENE EDWARDS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:14-CV-3124-B |
| | § | |
| SYLVIA MATHEWS BURWELL, | § | |
| Secretary, UNITED STATES | § | |
| DEPARTMENT OF HEALTH AND | § | |
| HUMAN SERVICES and HER | § | |
| UNKNOWN FEDERAL CENTRAL | § | |
| AND REGIONAL OFFICER AGENTS | § | |
| FOR THE TITLE XVIII MEDICARE | § | |
| PROGRAM, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Failure to State a Claim (doc. 12), filed on March 9, 2015. For the reasons that follow, the Court concludes that Defendants' Motion should be and hereby is **GRANTED.**

## I.

## BACKGROUND[1]

A.      *Factual Background*

Plaintiff Dr. Dralves Gene Edwards, a physician, maintained a medical practice from 1997

---

[1] The Court draws its factual account from the allegations contained in Plaintiff's First Amended Complaint (doc. 9) and from the attachments and documents incorporated therein by reference. *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).

to 2001, through which he provided health care services to Medicare beneficiaries under the federal Medicare program, as established by the Medicare Act, 42 U.S.C. § 1395 *et seq. See* doc. 9, Am. Compl. He brings this lawsuit to challenge the manner in which his Medicare claims were processed and reviewed. *Id.* at ¶¶ 1–4. Plaintiff asserts that the Secretary of Health and Human Services and her unknown agents (collectively, "Defendants") used the Medicare claims review process to engage in targeted attacks on certain health care providers, including Plaintiff. *Id.* at ¶ 13. According to Plaintiff, these targeted attacks included "economical assaults" and "unmerited criminal assaults," which were intentionally directed at minority providers and at providers who rendered services in geographic areas primarily consisting of "low-income medically underserved individuals." *Id.* at ¶¶ 27–28, 47.

Plaintiff avers that these discriminatory practices were brought to light in 2014, when the Wall Street Journal released previously unavailable Medicare claims data, which revealed a disparity in Defendants' handling and processing of certain claims. *Id.* at ¶¶ 27, 52. Regarding the alleged injuries he personally experienced, Plaintiff indicates that Defendants denied nearly all of his Medicare claims, and he notes that the discriminatory nature of the review process is illustrated by the fact that these denials were subsequently reversed at a rate in excess of 90%. *Id.* at ¶ 52; *see also* doc. 14, Pl.'s Resp. 6. Despite his success in having most of the denials overturned, Plaintiff maintains that the span of time between the denial of a claim and its eventual reversal often creates cash flow problems, which can jeopardize a provider's practice. *Id.* at ¶ 52. Plaintiff thus contends that Defendants' unconstitutional and discriminatory "bulk" denial of claims forced him to close his medical practice in 2001. *Id.* at ¶ 46.

Plaintiff alleges that through these acts, Defendants violated the Equal Protection Clause and

the Due Process Clause of the Fifth Amendment to the U.S. Constitution. *Id.* at ¶ 54. He thus asserts claims under 42 U.S.C. §§ 1981, 1983 and Title VI of the Civil Rights Act of 1964, as well as a *Bivens* claim. *Id.* at ¶¶ 23, 54–55. Plaintiff seeks compensatory damages, a declaratory judgment, a restraining order, and attorney's fees. *Id.* at ¶ 59.

B.      *Procedural Background*

        Plaintiff filed this lawsuit on August 30, 2014 on behalf of himself and other similarly situated health care providers who render services under the Medicare program. *See* doc. 1, Orig. Compl; Am. Compl. ¶ 50. Plaintiff subsequently amended his complaint on February 19, 2015. *See* Am. Compl. On March 9, 2015, Defendants filed the present Motion to Dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and under Rule 12(b)(6) for failure to state a claim. Doc. 12, Mot. to Dismiss ("Defs.' Mot."). Plaintiff submitted his Response to Defendants' Motion on March 23, 2015. Doc. 14, Pl.'s Resp. On April 6, 2015, Defendants filed their Reply, which was followed by Plaintiff's Sur-reply, filed on April 22, 2015. Docs. 15, Defs.' Reply; 16, Pl.'s Sur-reply. As such, Defendants' Motion to Dismiss is ripe for the Court's review.

## II.

## LEGAL STANDARD

A.      *Rule 12(b)(1)*

        A court must dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) where it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998). In ruling on a motion to dismiss for lack of subject matter jurisdiction, a court may evaluate "(1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by

undisputed facts plus the court's resolution of disputed facts." *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001); *see also Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981). To the extent the court relies on the complaint alone, however, the court must accept all factual allegations as true. *Id.* "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). If the jurisdictional allegations in the complaint are sufficient, then the complaint stands. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1983).

B.      *Rule 12(b)(6)*

Rule 12(b)(6) authorizes the court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). The court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotations and alterations omitted).

## III.

## ANALYSIS

Defendants seek the dismissal of Plaintiff's lawsuit for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim upon which relief can be granted. *See* Defs.' Mot. In moving to dismiss this lawsuit for lack of subject matter jurisdiction, Defendants argue that Plaintiff's claims arise under the Medicare Act and are thus barred by 42 U.S.C. §§ 405(g) and 405(h), because Plaintiff can only seek judicial review of his Medicare claims after receiving an adverse final decision from the Secretary of Health and Human Services pursuant to an administrative review process. *Id.* at 4. Defendants further assert that the Court lacks subject matter jurisdiction because Defendants are protected from Plaintiff's lawsuit by sovereign immunity, and they note that Plaintiff has failed to establish that a waiver of such immunity applies. *Id.* at 6–8. Moreover, Defendants argue that Plaintiff fails to state a *Bivens* claim. *Id.* at 8. Lastly, Defendants contend that the Court's lack of jurisdiction over these claims prevents Plaintiff from seeking a declaratory judgment. *Id.* at 9. The Court thus considers the parties' respective arguments as to these issues, in turn, below.

A.      *42 U.S.C. §§ 405(g), 405(h)*

In moving to dismiss this lawsuit for lack of subject matter jurisdiction, Defendants argue that Plaintiff's claims are barred by 42 U.S.C. §§ 405(g) and 405(h), as he may only seek judicial review

of his Medicare claims after following the appropriate administrative procedures and receiving a final

decision on his claims from the Secretary of Health and Human Services ("HHS"). Defs.' Mot. 4–5.

Section 405(h), made applicable to the Medicare Act by 42 U.S.C. § 1395ii (and accordingly

understood to refer to the HHS Secretary), provides that

> [t]he findings and decision of the Commissioner of Social Security
> after a hearing shall be binding upon all individuals who were parties
> to such hearing. No findings of fact or decision of the Commissioner
> of Social Security shall be reviewed by any person, tribunal, or
> governmental agency except as herein provided. No action against
> the United States, the Commissioner of Social Security, or any officer
> or employee thereof shall be brought under section 1331 or 1346 of
> Title 28 to recover on any claim arising under this subchapter.

42 U.S.C. § 405(h); *Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 653 (5th Cir. 2012). The Fifth

Circuit has made clear that "[t]he Medicare Act severely restricts the authority of federal courts,"

as it requires that "'virtually all legal attacks' under the Act be brought through the agency."

*Physician Hosps.*, 691 F.3d at 653 (quoting *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S.

1, 13 (2000)). Thus, judicial review of claims arising under the Medicare Act "is available only after

a party first presents the claim to the [HHS] Secretary and receives a final decision," in the manner

provided by 42 U.S.C. § 405(g). *Id.*

     In their Motion to Dismiss, Defendants argue that Plaintiff's claims arise under the Medicare

Act and thus are subject to the judicial review requirements established by Sections 405(g) and

405(h). Defs.' Mot. 6. Defendants next contend that, because Plaintiff's claims arise under the Act,

he is unable to seek judicial review, as he has already appealed the denial of his benefits through the

administrative process and has obtained a favorable outcome on most of them. Doc. 15, Defs.' Reply

3. Because one cannot recover on a claim after it has been successfully litigated, Defendants assert

that no recovery is available to Plaintiff through this lawsuit, and that the Court thus lacks subject matter jurisdiction. *Id.*

In response to Defendants' arguments, Plaintiff asserts that 42 U.S.C. § 405(h) is not applicable because the present case is focused on the racial profiling in which Defendants allegedly engaged when initially denying his claims, which Plaintiff maintains is distinct from claims arising under the Medicare Act. Pl.'s Resp. 6–7.

When addressing a dispute related to Medicare coverage, the Court must first consider whether the asserted claim falls under the Medicare Act and therefore calls for application of 42 U.S.C. § 405(h). *Heckler v. Ringer*, 466 U.S. 602, 615 (1984) ("Thus, to be true to the language of the statute, the inquiry in determining whether 405(h) bars federal-question jurisdiction must be whether the claim 'arises under' the Act.") (citing *Matthews v. Eldridge*, 424 U.S. 319, 328 (1976)). The Supreme Court has established that a claim arises under the Medicare Act if the Act "provides both the standing and the substantive basis" for the asserted action. *Weinberger v. Salfi*, 422 U.S. 749, 760–61 (1975). A claim also arises under the Act if it is "inextricably intertwined" with a claim for Medicare benefits and would require the court to review the Medicare claim determinations in resolving the matter. *Marsaw v. Thompson*, 133 F. App'x 946, 948 (5th Cir. 2005).

In this case, the Medicare Act provides the "substantive basis" for Plaintiff's allegations, because exercising jurisdiction over this lawsuit would require the Court to revisit Plaintiff's Medicare claims and make determinations regarding the appropriateness of the original denial of such claims. *Weinberger*, 422 U.S. at 761; *see also Marsaw*, 133 F. App'x at 948 (concluding that a claim arose under the Medicare Act where "a court would necessarily have to review the propriety of thousands of [a Medicare contractor's] Medicare claims determinations and the decisions of its hearing

-7-

officers").

Although Plaintiff argues that this action is focused solely on his constitutional claim that Defendants engaged in "Racial Medical Provider Profiling," which he states has no connection to the policy or procedure guiding the review of Medicare claims, the Supreme Court has established that the constitutional nature of a claim does not exempt a plaintiff from the requirements set forth in 42 U.S.C. § 405(h). *Salfi*, 422 U.S. at 760–61; *see also Physician Hosps.*, 691 F.3d at 656; Pl.'s Resp. 6. The Fifth Circuit applied this reasoning in *Affiliated Professional Home Health Care Agency v. Shalala*, where the plaintiff, a health care agency, alleged that the HHS Secretary violated its due process and equal protection rights by "improperly and arbitrarily enforcing various Medicare rules and regulations based solely on the fact that [plaintiff] is an African-American owned enterprise." 164 F.3d 282, 284 (5th Cir. 1999). The court, however, concluded that this claim was not collateral to the claim for entitlement under the Medicare Act, noting that resolving the constitutional issues would require the court "to immerse itself in [Medicare] regulations and make a factual determination" on the issues underlying plaintiff's Medicare claims. *Id.* at 285–86. The same reasoning applies to the present case, as Plaintiff's allegations—although presented in constitutional terms—are based on his complaint that his Medicare claims were improperly rejected when initially submitted. Therefore, the Court concludes that Plaintiff's allegations are not collateral to the original request for Medicare entitlements, but rather arise under the Medicare Act and are subject to the requirements of Sections 405(g) and 405(h).

Because Plaintiff's claims arise under the Medicare Act, Sections 405(g) and 405(h) require that he first exhaust Medicare's administrative appeals process and receive a "final decision" from the Secretary before seeking judicial review of the decision. *Eldridge*, 424 U.S. at 327. As stated in

his complaint, Plaintiff's pursuit of the administrative appeals process ultimately led to his claim denials being "reversed at levels in excess of 90%." Am. Compl. ¶ 52. Plaintiff does not clearly indicate whether he fully exhausted the entire administrative appeals process established by Section 405(g). *See id.* However, even accepting that Plaintiff did exhaust his administrative remedies in obtaining the reversal of the denials, Plaintiff would be precluded from bringing the present claim before this Court; in addition to the pursuit of administrative remedies, "[a] condition for jurisdiction under § 405(g) is that the Medicare system has made a determination adverse to the claimant." *Marsaw*, 133 F. App'x at 948 (citing *Weinberger*, 422 U.S. at 758 n.6). The fact that more than 90% of the denials of Plaintiff's claims were ultimately reversed demonstrates that the outcome of this administrative review process was not adverse. Because Plaintiff was successful in obtaining a reversal of most of his denials, the Medicare Act precludes any additional relief for these claims. *Id.* ("Because [the plaintiff] has now received precisely the Medicare payments he claims were wrongfully denied, and the statute entitles him to no other relief, his case is moot."). With respect to any remaining denials that were not reversed through the administrative review process, Plaintiff's complaint contains neither allegations requesting their review nor other facts indicating their status, as he instead focuses on Defendants' alleged racial profiling in initially denying the claims.

For the reasons stated above, the Court concludes that it lacks subject matter jurisdiction over Plaintiff's claims based on the denial of his Medicare benefits, and accordingly **GRANTS** Defendants' Motion on this issue.

B.      *Sovereign Immunity*

As an additional basis for dismissal due to lack of subject matter jurisdiction, Defendants assert that they are entitled to sovereign immunity. They note that Plaintiff brings this suit on the

ground that Defendants "engaged in intentional discriminatory acts and actions" against his delivery of health care services under the Medicare program. Defs.' Mot. 6; Am. Compl. ¶ 10. However, Defendants insist that they are protected from such claims by sovereign immunity and that Plaintiff has failed to show that a waiver of such immunity applies. Defs.' Mot. 7. Defendants draw a comparison to *Peterson v. Weinberger*, where the Fifth Circuit found that the defendants—the Secretary and individual employees of the Department of Health, Education and Welfare—were protected by sovereign immunity from an action concerning Medicare claims. 508 F.2d 45, 50–51 (5th Cir. 1975); Defs.' Mot. 7.

In response to Defendants' arguments, Plaintiff lists possible exceptions to the application of sovereign immunity—that the official's authority to act is unconstitutional and that the official acted beyond the powers conferred to him or her by statute—but offers no allegations, in either his briefing or his complaint, indicating how Defendants' actions fall into these exceptions. Doc. 16, Pl.'s Sur-reply 5 (citing *Unimex, Inc. v. U.S. Dep't of Hous. & Urban Dev.*, 594 F.2d 1060, 1062 (5th Cir. 1979).[2]

Based on the filings, it appears that the HHS Secretary and employees were acting within the scope of their official duties in administering the Medicare Act and are therefore entitled to sovereign immunity. *Marsaw*, 133 F. App'x at 949. Plaintiff fails to present factual allegations indicating how Defendants acted beyond the powers conferred to them, and the Court is likewise unable to identify any allegations suggesting a waiver of immunity. Therefore, the Court concludes that Defendants are

---

[2] In addition, Plaintiff asserts that Defendants' liability under *Bivens* removes the protection of sovereign immunity. Pl.'s Sur-reply 6. Because the Court concludes that Plaintiff's *Bivens* claim is without basis, as detailed below, it need not address this argument further.

protected by sovereign immunity and accordingly **GRANTS** Defendants' Motion on this matter.

C.    *Bivens Claim*

Defendants further seek the dismissal of Plaintiff's *Bivens* claim, which is based on the allegation that Defendants violated Plaintiff's constitutional rights by using the Medicare claims review process to cause economic injury to Plaintiff's medical practice. Am. Compl. ¶ 52.

After reviewing Plaintiff's allegations, the Court concludes that he has failed to allege a *Bivens* claim. As the Fifth Circuit has stated when addressing this issue, courts "will not imply a *Bivens* remedy for an alleged constitutional violation in the denial of Medicare Act reimbursements, because Congress has created a comprehensive statutory administrative review mechanism, which was intended fully to address the problems created by wrongful denial of Medicare reimbursements." *Marsaw,* 133 F. App'x at 948; *see also Home Health Licensing Specialists Inc. v. Leavitt*, No. 3:07-CV-2150-B, 2008 WL 4830543, at *7 (N.D. Tex. Nov. 7, 2008). Although Plaintiff insists that "there is nothing that would support that a review by the secretary of the Department would address or rectify the Constitutional violations" he has asserted, he neglects to offer any argument or authority to support his request for relief. Pl.'s Resp. 9. Accordingly, the Court concludes that Plaintiff has failed to state a *Bivens* claim and therefore **GRANTS** Defendants' Motion on this issue.[3]

D.    *Declaratory Judgment*

Lastly, Defendants seek the dismissal of Plaintiff's request for a declaratory judgment. Defs.' Mot. 9. Because the Court dismisses all of Plaintiff's underlying claims, his request for declaratory

---

[3] Because the Court concludes that Plaintiff has failed to state a *Bivens* claim, it need not address the parties' arguments regarding the applicability of the discovery rule to the running of the statute of limitations as to this claim. *See* Pl.'s Resp. 10–11; Defs.' Reply 4.

relief cannot stand alone and cannot provide an independent basis for subject matter jurisdiction. *Skelly Oil Co. v. Phillips Co.*, 339 U.S. 667, 671–72 (1950). Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's request for declaratory judgment.

IV.

CONCLUSION

For the aforementioned reasons, the Court **GRANTS** Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Failure to State a Claim. Doc. 12. Plaintiff's claims are therefore **DISMISSED**.

SO ORDERED.

Dated: July 8, 2015.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE